**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE WATSON, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| ACTIVISION BLIZZARD, INC., REVETA BOWERS, ROBERT CORTI, HENDRIK HARTONG III., BRIAN KELLY, BOBBY KOTICK, BARRY MEYER, ROBERT MORGADO, PETER NOLAN, DAWN OSTROFF, and CASEY WASSERMAN. | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Kyle Watson ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Activision Blizzard, Inc. ("Activision" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Microsoft Inc. ("Parent," or "Microsoft") as a

- 1 -
COMPLAINT

1. result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction valued at approximately $68.7 billion (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a January 18, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Microsoft will acquire all of the remaining outstanding shares of Activision's common stock at a price of $95.00 per share in cash. As a result, Activision will become an indirect wholly-owned subsidiary of Microsoft.

3. Thereafter, on February 18, 2022, Activision filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Preliminary Proxy Statement describes an insufficient process in which the Activision Board failed to create an independent committee composed of disinterested directors to run the sales process.

5. Additionally, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement with the SEC in an effort to solicit Plaintiff to vote his Activision shares in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Activision,

provided by the Company to the Company's financial advisor Allen & Company LLC ("Allen & Company"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Allen & Company and provided to the Board.

7. Accordingly, this action seeks to enjoin the Proposed Transaction.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9. Plaintiff is a citizen of Tennessee and, at all times relevant hereto, has been an Activision stockholder.

10. Defendant Activision is one of the nation's leaders in interactive gaming. Activision is incorporated under the laws of the State of Delaware and has its principal place of business at 3100 Ocean Park Blvd, Santa Monica, CA 90405. Shares of Activision common stock are traded on the Nasdaq Exchange under the symbol "ATVI".

11. Defendant Reveta Bowers ("Bowers") has been a Director of the Company at all relevant times.

12. Defendant Hendrik Hartong III. ("Hartong") has been a director of the Company at all relevant times.

13. Defendant Robert Corti ("Corti") has been a director of the Company at all relevant times.

14. Defendant Brian Kelly ("Kelly") has been a director of the Company at all relevant times. Kelly serves as the chairman of the Board of Directors.

15. Defendant Bobby Kotick ("Kotick") has been a director of the Company at all relevant times. In addition, Kotick serves as the Company's Chief Executive Officer ("CEO").

16. Defendant Barry Meyer ("Meyer") has been a director of the Company at all relevant times.

17. Defendant Robert Morgado ("Morgado") has been a director of the Company at all relevant times.

18. Defendant Peter Nolan ("Nolan") has been a director of the Company at all relevant times.

19. Defendant Dawn Ostroff ("Ostroff") has been a director of the Company at all relevant times.

20. Defendant Casey Wasserman ("Wasserman") has been a director of the Company at all relevant times.

21. Defendants identified in ¶¶ 11 - 20 are collectively referred to as the "Individual Defendants."

22. Non-Party Microsoft is a is a computer software developer with offices throughout the United States and its shares are traded on the Nasdaq Stock Exchange under the symbol "MSFT."

23. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Activision maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

27. Activision Blizzard, Inc. is an American video game holding company based in Santa Monica, California. The company was founded in July 2008 through the merger of Activision, Inc. (the publicly traded parent company of Activision Publishing) and Vivendi Games. The company is traded on the NASDAQ stock exchange under the ticker symbol ATVI, and since 2015 has been one of the stocks that make up the S&P 500. Activision Blizzard currently includes five business units: Activision Publishing, Blizzard Entertainment, King, Major League Gaming, and Activision Blizzard Studios.

28. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the November 2, 2021 press release announcing its 2021 Q3 financial results, the Company highlighted such milestones as net revenues presented in accordance with GAAP were $2.07 billion, as compared with $1.95 billion for the third quarter of 2020. GAAP net revenues from digital channels were $1.85 billion. GAAP operating margin was 40%.

29. Speaking on these positive results, CEO Defendant Kotick commented on the Company's positive financial results as follows, "I'm pleased to report strong third quarter results ahead of our prior outlook," "We are excited about this week's Call of Duty launch and expect continued success in the fourth quarter. I want to thank our employees for their continued commitment to each other, the company, and our players. We look forward to sharing progress updates on our workplace initiatives, alongside our business performance."

30. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Activision. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

- 5 -
COMPLAINT

31. Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Activision to enter into the Proposed Transaction without providing requisite information to Activision stockholders such as Plaintiff.

**The Flawed Sales Process**

32. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

33. Notably, while the Preliminary Proxy Statement makes reference to an "ad hoc committee" it fails to provide adequate information regarding whether this ad hoc committee was a committee composed of independent and disinterested board members and tasked with running the sales process.

34. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner

**The Proposed Transaction**

35. On January 18, 2022, Activision and Microsoft issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **REDMOND, Wash. and SANTA MONICA**, Calif., Jan. 18, 2022 /PRNewswire/ -- With three billion people actively playing games today, and fueled by a new generation steeped in the joys of interactive entertainment, gaming is now the largest and fastest-growing form of entertainment. Today, Microsoft Corp. (Nasdaq: MSFT) announced plans to acquire Activision Blizzard Inc. (Nasdaq: ATVI), a leader in game development and interactive entertainment content publisher. This acquisition will accelerate the growth in Microsoft's gaming business across mobile, PC, console and cloud and will provide building blocks for the metaverse.
>
> Microsoft will acquire Activision Blizzard for $95.00 per share, in an all-cash transaction valued at $68.7 billion, inclusive of Activision Blizzard's net cash. When the transaction closes, Microsoft will become the world's third-largest gaming company by revenue, behind Tencent and Sony. The planned acquisition includes iconic franchises from the Activision, Blizzard and King studios like "Warcraft," "Diablo," "Overwatch," "Call of Duty" and "Candy Crush," in addition

to global eSports activities through Major League Gaming. The company has studios around the word with nearly 10,000 employees.

Bobby Kotick will continue to serve as CEO of Activision Blizzard, and he and his team will maintain their focus on driving efforts to further strengthen the company's culture and accelerate business growth. Once the deal closes, the Activision Blizzard business will report to Phil Spencer, CEO, Microsoft Gaming.

"Gaming is the most dynamic and exciting category in entertainment across all platforms today and will play a key role in the development of metaverse platforms," said Satya Nadella, chairman and CEO, Microsoft. "We're investing deeply in world-class content, community and the cloud to usher in a new era of gaming that puts players and creators first and makes gaming safe, inclusive and accessible to all."

"Players everywhere love Activision Blizzard games, and we believe the creative teams have their best work in front of them," said Phil Spencer, CEO, Microsoft Gaming. "Together we will build a future where people can play the games they want, virtually anywhere they want."

"For more than 30 years our incredibly talented teams have created some of the most successful games," said Bobby Kotick, CEO, Activision Blizzard. "The combination of Activision Blizzard's world-class talent and extraordinary franchises with Microsoft's technology, distribution, access to talent, ambitious vision and shared commitment to gaming and inclusion will help ensure our continued success in an increasingly competitive industry."

Mobile is the largest segment in gaming, with nearly 95% of all players globally enjoying games on mobile. Through great teams and great technology, Microsoft and Activision Blizzard will empower players to enjoy the most-immersive franchises, like "Halo" and "Warcraft," virtually anywhere they want. And with games like "Candy Crush," Activision Blizzard's mobile business represents a significant presence and opportunity for Microsoft in this fast-growing segment.

The acquisition also bolsters Microsoft's Game Pass portfolio with plans to launch Activision Blizzard games into Game Pass, which has reached a new milestone of over 25 million subscribers. With Activision Blizzard's nearly 400 million monthly active players in 190 countries and three billion dollar franchises, this acquisition will make Game Pass one of the most compelling and diverse lineups of gaming content in the industry. Upon close, Microsoft will have 30 internal game development studios, along with additional publishing and esports production capabilities.

The transaction is subject to customary closing conditions and completion of regulatory review and Activision Blizzard's shareholder approval. The deal is expected to close in fiscal year 2023 and will be accretive to non-GAAP earnings

per share upon close. The transaction has been approved by the boards of directors of both Microsoft and Activision Blizzard

***Potential Conflicts of Interest***

36. The breakdown of the benefits of the deal indicate that Activision insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Activision.

37. Notably, Company insiders, currently own large, illiquid portions of Company stock, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. While the Preliminary Proxy Statement provides the following information, it fails to provide an accounting of the consideration that will be paid to Company insiders for these shares upon the consummation of the Proposed Transaction:

| | Shares of Activision Blizzard Common Stock Beneficially Owned | | | |
|---|---|---|---|---|
| Name | Shares Owned (#) | Right to Acquire$_{(1)}$ (#) | Total Shares Owned plus Right to Acquire (#) | Percent of Outstanding Shares$_{(2)}$ (%) |
| Daniel Alegre | 14,563 | 137,879$_{(3)}$ | 152,442 | * |
| Reveta Bowers | 15,284$_{(4)}$ | 671$_{(5)}$ | 15,955 | * |
| Brian Bulatao | — | 15,747$_{(6)}$ | 15,747 | * |
| Robert Corti | 121,016$_{(7)}$ | 671$_{(5)}$ | 121,687 | * |
| Grant Dixton | — | — | — | * |
| Dennis Durkin | 157,559 | — | 157,559 | * |
| Hendrik Hartong III | 38,172$_{(8)}$ | 671$_{(5)}$ | 38,843 | * |
| Brian Kelly | 1,134,685$_{(9)}$ | 81,347$_{(10)}$ | 1,216,032 | * |
| Robert Kotick | 4,317,285$_{(11)}$ | 2,201,878$_{(12)}$ | 6,519,163 | * |
| Barry Meyer | 51,052$_{(13)}$ | 671$_{(14)}$ | 51,723 | * |
| Robert Morgado | 119,419$_{(15)}$ | 44,671$_{(16)}$ | 164,090 | * |
| Claudine Naughton | — | — | — | * |
| Peter Nolan | 220,778$_{(17)}$ | 671$_{(5)}$ | 221,449 | * |
| Dawn Ostroff | 4,767 | 671$_{(5)}$ | 5,438 | * |
| Chris Walther | 39,684$_{(18)}$ | — | 39,684 | * |
| Casey Wasserman | 23,059$_{(19)}$ | 671$_{(5)}$ | 23,730 | * |

| | | | | |
|---|---|---|---|---|
| Armin Zerza | — | 59,067[20] | 59,067 | * |
| 1 current directors and executive officers as a group (14 persons) | 6,060,080[21] | 2,545,286[22] | 8,605,365 | 1.10% |

38. In addition, Company insiders, currently own company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. Despite this, the Preliminary Proxy Statement fails to provide an accounting of these equity awards, or the consideration which will be paid out in exchange upon the consummation of the Proposed Transaction.

39. Moreover, certain employment agreements with certain Activision executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Officer[1] | Cash ($)[2] | Equity ($)[3] | Perquisites/ Benefits ($)[4] | Total ($) |
|---|---|---|---|---|
| Robert A. Kotick | $14,369,130 | $ 0 | $223,172 | $14,592,302 |
| Armin Zerza | $ 4,115,068 | $21,142,348 | $ 49,832 | $25,307,249 |
| Daniel Alegre | $ 5,529,452 | $23,497,869 | $ 49,832 | $29,077,153 |
| Brian Bulatao | $ 4,095,890 | $ 7,159,120 | $ 49,832 | $11,304,842 |
| Grant Dixton | $ 2,678,938 | $12,037,260 | $ 41,238 | $14,757,436 |
| Claudine Naughton[5] | $ 0 | $ 2,080,120 | $ 0 | $ 2,080,120 |

40. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41. Thus, while the Proposed Transaction is not in the best interests of Activision, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

42. On February 18, 2022, the Activision Board caused to be filed with the SEC the materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

a. Specific information regarding if the "ad hoc committee" of the Board was a committee composed of independent and disinterested Board members which was tasked to run the sales process; and

b. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides

illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Activision's Financial Projections*

44. The Preliminary Proxy Statement fails to provide material information concerning financial projections for Activision provided by Activision management to the Board and Allen & Company and relied upon by Allen & Company in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

45. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Allen & Company reviewed, "certain internal financial forecasts, estimates and other financial and operating data relating to Activision Blizzard, provided to or discussed with Allen & Company by the management of Activision Blizzard."

46. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Activision management provided to the Board and Allen & Company. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

47. With regard to the *Long Range Plan* projections, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

   a. Revenue, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the impact of deferrals from Activision

Blizzard's accounting treatment under GAAP on certain of Activision Blizzard's online-enabled products; and

    b.  Operating Income, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings before interest and taxes, and, other costs, net, acquisition-related costs, net and certain other expenses that result from unplanned events outside the ordinary course of continuing operations.

48.   With regard to the *Management Forecasts* prepared by Activision Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a.  Revenue, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the impact of deferrals from Activision Blizzard's accounting treatment under GAAP on certain of Activision Blizzard's online-enabled products;

    b.  EBIT (Pre-SBC), including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings before interest and taxes, and, other costs, net, acquisition-related costs, net and certain other expenses that result from unplanned events outside the ordinary course of continuing operations; and

    c.  Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings before interest, taxes, acquisition-related costs, net and certain other expenses that result from unplanned events outside the ordinary course of continuing operations.

49.   The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50.   This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Allen & Company's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Allen & Company*

52. In the Preliminary Proxy Statement, Allen & Company describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53. With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific metrics for each comparable company;

    b. The specific inputs and assumptions used to determine the utilized ranges of calendar year 2022 estimated EBITDA multiples of 13.5x to 18.0x;

    c. The specific inputs and assumptions used to determine the utilized ranges of calendar year 2023 estimated EBITDA multiples of 12.5x to 15.0x; and

    d. The specific reasoning as to why only three companies where chosen for comparison.

54. With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific metrics for each precedent transaction;

    b. The specific date on which each precedent transaction closed;

      c. The aggregate value of each precedent transaction; and

      d. The specific inputs and assumptions used to determine the utilized range of latest 12 months EBITDA multiples of 14.0x to 20.0x.

55. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a. The implied terminal values for Activision calculated;

      b. The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 2.25% to 2.75%; and

      c. The specific inputs and assumptions used to determine the utilized discount rate range of 6.50% to 8.00%.

56. With respect to the *Wall Street Research Analysts* analysis, the Preliminary Proxy Statement fails to disclose the following:

      a. The specific price targets utilized; and

      b. The specific identity of the Wall Street firms that created the utilized price targets.

57. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

58. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Activision stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

59. Plaintiff repeats all previous allegations as if set forth in full herein.

60. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

61. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

62. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

63. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have

known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

64. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

65. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

66. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

67. Plaintiff repeats all previous allegations as if set forth in full herein.

68. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

69. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved,

ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Activision's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

71. The Individual Defendants acted as controlling persons of Activision within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Activision to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Activision and all of its employees. As alleged above, Activision is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act to

disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 24, 2022

**BRODSKY & SMITH**

By: _____
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*